(77 App. Div. 574.)

RICHTMYER v. LASHER et al.

(Supreme Court, Appellate Division, Third Department. December 3, 1902.)

1. TRUSTS—ASSIGNMENT OF MORTGAGE—FORBIDDING FORECLOSURE.
    An owner of land executed a purchase-money mortgage, and later gave his brother two other mortgages. He afterwards conveyed to the brother's son-in-law in consideration of the assumption of the mortgages. The son-in-law then conveyed part of the land by warranty deed. The brother then assigned his two mortgages to his daughter, reciting that the assignment was made to protect her and her husband, the son-in-law, from all liability incurred on account of the warranty deeds made by them, and on condition that, if more deeds were given for unsold portions, the mortgages assigned should be proportionately released, the

purchase money being applied on such mortgages or the prior mortgage.
*Held*, that the brother's assignment in his lifetime retained no interest
in him, but created a trust in the daughter, which would be violated by
her foreclosure of the mortgages against the son-in-law's grantees.

2. SAME—ASSIGNEE OF TRUSTEE.
    The assignment of the brother to his daughter being recorded, the
daughter's assignee, who took the mortgages from her on a prior indebted-
ness, had no greater rights than she herself had, but took them with
the same trust.

3. SAME—ASSIGNMENT BY TRUSTOR'S ADMINISTRATOR—EFFECT AS TO TRUSTEE.
    An assignment made by the son-in-law, as administrator of the brother,
to the daughter, reciting that the intention was to convey any interest
"the estate of said deceased may have in the mortgages," did not amount
to a waiver of the son-in-law's personal interest in the performance of
the trust; nor did it discharge the daughter from her obligation as
trustee.

4. SAME—TRUSTEE'S GRANTEES—EQUITY TO ENFORCE TRUST.
    The son-in-law's grantees had an equity in the enforcement of the
trust, and could resist the foreclosure action of the daughter's assignee
by relying thereon.

Appeal from judgment on report of referee.

Action by Alvin Richtmyer against Marquis A. Lasher and others.
Judgment for plaintiff, and defendants appeal. Reversed.

See 78 N. Y. Supp. 1135.

In April, 1883, Marquis A. Lasher purchased a farm in Delaware county,
and gave a $5,500 purchase-money mortgage thereon. In July of that year
he executed to his brother, Allen Lasher, two other mortgages upon the
same premises,—one for $2,500, and the other for $400. In April, 1887,
Marquis A. Lasher told his brother Allen that he was convinced that he
could not pay off these mortgages, and was advised that Samuel Decker,
who was the son-in-law of Allen Lasher, would take the farm for the amount
of the mortgages on it. There were also some judgments then outstanding
against Marquis Lasher, which were liens on the farm subsequent to the
mortgages. Marquis Lasher thereupon conveyed the farm to Samuel Decker,
the consideration being the mortgages thereon. Samuel Decker thereupon
proceeded to sell parcels of land off of such farm, and executed warranty
deeds for the same. One of such deeds was executed in August, and the
other in September, of 1887, and both were to Ernest C. Rost, and conveyed
lots designated on the map in the record as lots A, B, C, and D. In No-
vember of the same year, Rost, by warranty deeds, conveyed all of such
parcels, except D, to different parties, through whom the defendants in this
action claim. On June 22, 1889, the lands so conveyed to Rost were released
from the lien of the purchase-money mortgage. In July, 1891, Allen Lasher
assigned to his daughter Mary Decker, the wife of Samuel Decker, the two
mortgages, for $2,500 and for $400, which he held against the said farm,
by a qualified assignment, to which reference will hereafter be made.
Up to this time nothing had been paid or asked for, either of principal or
interest, upon these two mortgages. Subsequently Allen Lasher died, in
November, 1892, intestate, and Samuel Decker was appointed his adminis-
trator; and he, as such, on December 6, 1893, assigned such interest as Allen
Lasher still had in the said mortgages to his said wife, Mary Decker. The
plaintiff in this action claims to be the owner of such two bonds and mort-
gages by assignment from Mary Decker, made subsequent to this latter as-
signment to her by her husband as administrator of the estate of Allen
Lasher; and this action is brought to foreclose such mortgages, and for a
sale of the farm therein described. Several defendants, parties claiming
through the Rost conveyance, defend against a sale of the lots so conveyed
to them, on several grounds, which they claim operate to release such lands.

from the lien of such mortgages. The referee found against them on all such grounds, and from the judgment entered on his report this appeal is taken.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and CHESTER, JJ.

William C. Cammann, for appellants Parker Mann and Julia Mann.

George W. Stephens, for appellant Catherine A. Stephens.

H. Aplington, for appellants Annie D. Locke, Mary Locke, and Arabella L. Wyant.

Eugene E. Howe and C. L. Andrus, for respondent.

PARKER, P. J. From the voluminous facts found in this record, I have stated only those above set forth, because they suffice to present the question upon which I think the referee has erred.

The assignment of the two mortgages in question by Allen Lasher to Mary Decker on July 10, 1891, is one absolute in terms, except as to the last provision thereof, which reads as follows:

"This assignment is made to protect the said party of the second part hereto, and her husband, Samuel Decker, either or both, from any and all liability incurred by them, or either of them, on account of any deeds given by them for any portion of the Elwood farm, and also on condition that, when any other or more deeds are given for any unsold portion of said farm, then the party of the second part will execute releases from the mortgages hereby assigned on condition the purchase money is applied on either the Elwood mortgage or the mortgages hereby assigned."

In this provision I cannot discover that anything whatever is reserved to Allen Lasher. As to him, the assignment is complete, and all his rights and interests in the mortgages passed from him to her. The provision, it is true, limits her use and ownership, but retains nothing to him. Its purpose, evidently, was to place the mortgages in the custody and ownership of one who could not use them to disturb the possession or title of the grantees of Samuel Decker as to such of the mortgaged premises as he had already conveyed with warranty, and, as to such of the lands as still remained unsold, to enable him to give a title freed from the mortgages, provided the purchase money should be applied to discharging the mortgage liens then on the land. Both parties agree that by such provision a trust was created, and that Mary Decker took the mortgages subject to it; and, in my opinion, such trust was for the benefit of Samuel Decker, to protect him upon his warranties already made, and to preserve the purchase moneys thereafter received as a fund for the satisfaction of the liens on the farm. I gather from the evidence that Allen Lasher had suggested to Samuel Decker that he take the farm subject to the mortgages, and doubtless he had given him to understand that, as to the two which he (Lasher) then owned, he would not enforce them as against Decker. Thus he was willing to give up all his interest therein, and put them in the hands of his daughter, under the trust above indicated. This was the source, and the only source, of Mary Decker's title to the mortgages. The fact that she subsequently took an assignment from the administrator of Allen Lasher's estate of such mortgages does not change the situation.

As suggested above, after his assignment to her, Allen Lasher had not the slightest interest in the mortgages. Nothing was to be paid to him from the sales of the lands. All was to be applied upon the Elwood mortgage, in which he never had any ownership, or else upon the two mortgages in question, which he had thereby given to his daughter, with full power to collect and discharge. If it be suggested that there was a condition annexed to the assignment, concerning the application of the purchase money on the mortgages, the breach of which might possibly work a reversion of the mortgage to himself, it is sufficient to say that no such breach is claimed; and even if, by the administrator's assignment, she was relieved from such condition, it does not change the situation.

What rights, then, did Mary Decker acquire by this assignment from her father on July 10, 1891? I think it very clear that, if she had attempted to foreclose such mortgages and force a sale of the lands that Samuel Decker had sold to Rost, it would have been a direct violation of her trust, and he could have enjoined her from so doing. The clear and principal purpose of the trust was to "protect Samuel Decker on account of any deeds given for any portion of the Elwood farm." The only way such assignment could protect him was to prevent the mortgages being used to disturb the grantees in such deeds. Clearly, then, if they were ejected by a foreclosure of the mortgages at the suit of Mary Decker, she would be using the mortgages for the very purpose that the assignment to her was intended to prevent. Assuming, then, that she herself might not foreclose the mortgages as against the lots sold to Rost, I cannot understand how she could invest her assignee with that right. The assignment was on record, so that its force and effect were fully known to this plaintiff. He claims to have taken the mortgages from her upon a prior indebtedness, and clearly no equity is shown which would authorize him to claim any better title or greater rights than she herself had. He took the mortgages impressed with the same trust with which she held them, and hence cannot enforce them to the injury of Samuel Decker. 27 Am. & Eng. Enc. Law, 321.

It is found by the referee that by reason of Samuel Decker's assignment, as administrator of Allen Lasher's estate, of these same two mortgages, to his wife, he waived his rights in this trust. But I can find nothing in that act to indicate any intent to waive any of his individual rights. It is found as a fact that such assignment contained this clause: "The intention herein being to convey to Mary Decker any interest the estate of said deceased may have in the said two bonds and mortgages." This provision very clearly repels any inference that he conveyed to her any personal interest of his own, and it is very evident that he had doubts as to whether his intestate really had any. Very clearly, this act did not operate to surrender to her any rights secured to him by the trust in question. It seems to be assumed by the plaintiff that an absolute assignment by Allen Lasher to Mary Decker subsequent to the one of July 10, 1891, would have discharged her from the trust therein contained. But such is not the law. Having parted with his interest in the mortgages, and transferred them to Mrs. Decker impressed with the trust above

stated, he had no power to withdraw or alter it, although its creation was an entirely voluntary act on his part.    27 Am. & Eng. Enc. Law, 310; Mabie v. Bailey, 95 N. Y. 206; Wallace v. Berdell, 97 N. Y. 13.

There is no pretense that all parties in interest ever united to discharge these mortgages from the trust imposed upon them by Allen Lasher, and it seems plain that such trust followed them into the hands of this plaintiff.    As stated above, the main purpose of the trust was to protect the lands, which Samuel Decker had sold to Rost with warranty, from being sold under a foreclosure thereof, and this action the plaintiff has brought for the purpose of effecting that very sale.    The grantees of such lands, who are protected by Decker's warranty against such a sale, are parties to this action, as are also Mary Decker and the estate of Samuel Decker, who is now deceased. Such grantees have an equity in the enforcement of such trust.    Had the assignment of the mortgages been to Samuel, instead of to his wife, it would have inured to their benefit.    Mickles v. Townsend, 18 N. Y. 575.    Upon the same principle, the rights of Samuel Decker in the trust created for his benefit inured to their benefit, and they should be allowed to enforce them in this action.    All of the defendants who have appealed from the judgment directing a sale of the property make their title from Rost, and are entitled, if ejected by such sale, to recover over against the estate of Samuel Decker.    They should have been allowed, therefore, to invoke in this action the effect of the trust under which these mortgages were held by Mary Decker, and the judgment should have declared that as to these lands the mortgages could not be enforced.    For this error, the judgment must be reversed.

Judgment reversed, referee discharged, and new trial granted, with costs to appellant to abide event.    All concur.